1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHINDA NOMESIRI,                            No.  2:20–cv–1440–TLN–KJN PS

12                    Plaintiff,                 FINDINGS AND RECOMMENDATIONS ON
                                                 CROSS-MOTIONS FOR SUMMARY
13         v.                                    JUDGMENT

14   U.S. DEPT. OF EDUCATION,                    (ECF Nos. 15, 17.)

15                    Defendant.

16

17         Plaintiff Chinda Nomesiri alleges that the U.S. Department of Education improperly

18   rejected his claim under 34 C.F.R. § 685.215, which allows the Department to discharge a student

19   borrowers loan balance "for false certification of student eligibility or unauthorized payment."

20   (ECF No. 4 [First Amended Complaint ("FAC")].)  Nomesiri seeks review of the Department's

21   final decision under the Administrative Procedures Act ("APA"); therefore, review is confined to

22   the Administrative Record and the court resolves the action on cross-motions for summary

23   judgment.[1]  Nomesiri filed his motion for summary judgment.  (ECF 15.)  The Department filed

24   its cross-motion for summary judgment.  (ECF 17.)

25         For the reasons that follow, the undersigned recommends summary judgment be issued in

26   favor of the Department.

27   _____

28   [1] This motion proceeds before the undersigned pursuant to 28 U.S.C. Section 636 and Local Rule
     302(c)(21) for the entry of findings and recommendations.  See Local Rule 304.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

The Department's Loan Programs

The U.S. Department of Education has long offered various loan options for student borrowers who wish to attend postsecondary education institutions.  The Department originally offered these loans under the Federal Family Education Loan Program ("FFELP").  (ECF No. 17-3 ¶ 9.)  Under FFELP, Stafford loans—like Nomesiri's seven Stafford loans—were issued not by the Department, but by private banks.  (AR[2] 28-30; ECF No. 17-3 ¶ 9, 18.)  Stafford loans are offered to students to help cover the costs of attendance at qualified education institutions.  (ECF No. 17-3 ¶ 11.)  These private-issued loans were guaranteed, reinsured, "and often subsidized" by the Department or other nonprofit guarantors.  (Id.)  If a borrower defaulted on an FFELP loan the Department would step in as guarantor of the loan, pay the private lender, and attempt collection from the student borrower.  (ECF No. 17-3 ¶ 14.)

Since July 1, 2010, all new loans issued by the Department are issued under the Federal Direct Loan Program ("FDLP"), under which the Department is the lender.  (ECF No. 17-3 ¶ 9.)  The Department issues four main types of loans:  (1) Subsidized Stafford; (2) Unsubsidized Stafford; (3) PLUS; and (4) Consolidation.  (Id.)

Consolidation loans allow student borrowers to "pay[] off pre-existing loans and create[] a new loan . . . with a fixed interest rate."  (ECF No. 17-3 ¶ 12.)  These loans are often used to lower monthly student loan payments or prevent pre-existing loans from going into default or collections.  (Id.)  Consolidation loans can also help student borrowers avoid negative impacts to their credit rating.  (Id.)

Nomesiri's Student Loan History and the Disputed Consolidation Loans

Chinda Nomesiri took out a series of Stafford loans between May 2, 2005, and September 29, 2008, while attending Sacramento City College and California State University-Sacramento.  (AR 28-30.)  These loans were issued to Nomesiri, as a qualified student borrower, through the FFELP.  (ECF No. 17-3 ¶ 10.)

---

[2] Defendant filed a copy of the Administrative Record ("AR") with the court on disc, and served a copy on plaintiff.  (See ECF No. 13.)

In total, Nomesiri took out seven Stafford loans during this period in the following amounts: $1,100 (Loan #3), $1,166 (Loan #4), $5,000 (Loan #5), $5,500 (Loan #6), $5,000 (Loan #7), $5,500 (Loan #8), and $2,827 (Loan #9). (AR 28-29.) Five of these loans entered into default on April 23, 2015, due to nonpayment, and the other two on May 11, 2015, also due to nonpayment. (ECF No. 17-3 ¶¶ 17-18; AR 35-55.)

Two loans, "loans #3 and #4," were transferred from the original lender to the Department's "Debt Management Collection System (DMCS), a servicer for the Department." (See AR 65.) On July 30, 2015, the Department sent Nomesiri a written notice of default to his listed address at 7741 Frost Way in Sacramento, California. (AR 104.) This default notice provided Nomesiri a customer service phone number, instructing him that he could call "to enter into an acceptable Repayment Agreement or to find out additional information on the benefits of the Department's loan 'rehabilitation' and 'consolidation' programs." (Id.)

On September 2, 2015, a person identifying himself as Nomesiri called the Department's Default Resolution Group at the phone number provided in the July 30, 2015 default notice. (AR 60, 78.) The customer service employee verified Nomesiri's personally identifying information including his "name, Social Security Number, birth date, address, and telephone number." (AR 78; ECF No. 17-3 ¶ 21.) On this phone call, the person identifying himself as Nomesiri stated his inability to pay the necessary 15% of income to remove his loans from default. (AR 78; ECF No. 17-3 ¶ 21.) After this telephone discussion, the Department mailed Nomesiri a financial disclosure form to his listed address: 7741 Frost Way in Sacramento, California. (AR 78; ECF No. 17-3 ¶ 21.)

Less than ten days later, on September 11, 2015, a Direct Consolidation Loan Application and Promissory Note was created and electronically signed using Nomesiri's verified Federal Student Aid ("FSA") ID. (AR 78; ECF No. 17-3 ¶ 22.) The FSA ID is a unique set of username and password login credentials that allow student loan borrowers to electronically sign loan documents, such as, promissory notes. (ECF No. 17-3 ¶ 23.) The FSA ID requires information verified by the Social Security Administration uniquely identifying the student borrower, including: Social Security Number, name, and birth date. (Id.) Like the FSA ID's unique

3

identifier requirements, Nomesiri's Consolidation Loan Application and Promissory Note also "required significant personal information, including the borrower's name, address, email, telephone number, and Social Security Number." (AR 81; ECF No. 17-4 ¶ 29.) This consolidation application also provided blank spaces for the borrower to list two personal references and Nomesiri's application listed his brother and his "[c]hild's mother," along with their contact information. (AR 81.)

The Consolidation Loan Application and Promissory Note requested that all seven of Nomesiri's student loans be consolidated. (AR 82; ECF No. 17-3 ¶ 25.) The consolidation application was submitted with a "Repayment Plan Request," requesting the newly created consolidation loan be put into forbearance. (AR 32, 34; ECF No. 17-3 ¶ 26.) The forbearance was granted and the disclosure of these actions was sent to Nomesiri at his listed address of 7741 Frost Way in Sacramento, California. (Id.)

On October 14, 2015, two consolidation loans were issued: one for $21,354.45 (Loan #1) and one for $21,550.69 (Loan #2). (AR 28-29, 65-66; ECF No. 17-3 ¶ 26.) These two consolidation loans paid in full Nomesiri's original seven Stafford Loans. (AR 36, 39, 42, 45, 48, 51, 54; ECF No. 17-3 ¶ 27.) These consolidation loans did not provide any funds directly to the applicant. Instead, these loans paid the original lenders of the Stafford loans and created new consolidated loans with Nomesiri listed as the borrower. (AR 32-33; ECF No. 17-3 ¶ 26-27.)

In November of 2016, Nomesiri's consolidations loans—loans #1 and #2—became delinquent. (AR 31-34, 64.) On August 11, 2017, they went into default. (Id.)

On November 20, 2017, the Department sent an automated notice of default for lack of payment to Nomesiri's address on file, still at 7741 Frost Way in Sacramento, California. (AR 106; ECF No. 17-3 ¶ 29.)

On February 12, 2020, the Department obtained an offset payment of $1,003.00 from Nomesiri's tax return via the Treasure Offset Program ("TOP") and credited the amount towards his defaulted consolidation loans. (AR 79, 110; ECF No. 17-3 ¶ 30.)

Nomesiri followed up with the Department on April 22, 2020, in a type-written letter stating that he would "neither affirm, nor deny [the] purported debt." (AR 128-30.) But

4

1    Nomesiri sought to dispute the negative impact of the Department's collection practices on his

2    credit rating.  (AR 128-29.)  He also claimed that the Department was required to honor his

3    request under the Fair Debt Collections Practices Act ("FDCPA"), to provide him with

4    "validation" for the underlying debts that had been consolidated into loans #1 and #2.  (Id.)

5         On May 4, 2020 the Department responded to Nomesiri's letter in a letter of its own.  (AR

6    73, 109-28.)  The letter explained the Department's position that it had commenced debt

7    collection proceedings, including notifying consumer reporting agencies, because Nomesiri's

8    consolidation loans had entered default.  (AR 109.)  The Department's letter also explained that,

9    as "the Department is not debt collector as defined in the Act," it was not subject to the FDCPA.

10   (Id.)  Finally, the letter explained Nomesiri's loan history, including the consolidation process

11   that had taken place nearly five years prior in 2015.  (AR 110.)  It informed Nomesiri that those

12   loans were now in default and Nomesiri was still responsible for the remaining principle balance,

13   accrued interest, and all collection costs.  (AR 109-10.)

14        Nomesiri responded to the Department, again by letter, dated May 12, 2020.  (AR 4-10.)

15   In that letter he disputed the authenticity of the "validated documents," stating that the

16   Consolidation Loan Application and Promissory Note, were "**NOT** mine."  (AR 4.)  He also

17   claimed that the signature on the Promissory Note was "not [his] handwriting."  (Id.)  Further,

18   given the date of the Consolidation Loan Application and Promissory Note being September 11,

19   2015, Nomesiri claimed it was "impossible" for him to have signed it "because [he] was

20   incarcerated during this time."  (Id.)  Nomesiri attached a Sacramento County Superior Court

21   felony abstract of judgment, dated January 24, 2014, sentencing him to middle terms totaling 6

22   years and 8 months for various felonies.  (AR 8.)  No documentation was provided listing

23   Nomesiri's date of release from incarceration in the California Department of Corrections.  (AR

24   passim.)

25        The Department responded by letter on May 22, 2020, informing Nomesiri of the

26   documentation he must submit to be considered for loan discharge if he believed the

27   consolidation application was fraudulent.  (AR 11.)  The required documents in this "Loan

28   Discharge Application:  Unauthorized Signature/Unauthorized Payment" included, signature

samples, Nomesiri's social security card, a notarized written statement describing the

circumstances of the alleged fraud, and a police report describing that fraud.  (Id.)

On June 1, 2020, Nomesiri submitted the discharge application, excluding any police

reports.  (AR 18-27.)  His signed statement read:

> Please take note that the signature on the validated documents/promissory note on
> page 11 are NOT mine. The signature provided is not my handwriting. It look
> [sic] typed or printed. I have circled in blue ink this information. Furthermore, it
> was dated 9-11-2015, which is impossible for me because I was incarcerated
> during this period. Attached is my sentencing paper from the Superior Court of
> Sacramento County as proof (page 7-9). Therefore, I ask that you please DELETE
> all information regarding this account, STOP all debt collecting process and wage
> garnishments, and notify all Credit Bureaus on updated information.

(AR 21.)

On June 17, 2020, the Department's contractor employee recommended that Nomesiri's

discharge request be denied.  (AR 72.)  The employee cited the fact that she was unable to

determine whether Nomesiri was actually incarcerated during the time he claimed.  (Id.)

Moreover, the employee identified records of several contacts between the Department and a

person identifying himself as Nomesiri during the time of Nomesiri's claimed incarceration,

including the September 2, 2015 phone call and a series of letters sent on April 22, May 12, and

June 1, 2020, all from Nomesiri's address at 7741 Frost Way in Sacramento, California.  (Id.)

The employee also verified that Nomesiri had lived at this same registered address from

September 2012 through January 2020.  (AR 131-37.)  She also confirmed the authenticity of the

listed references on the Consolidation Loan Application.  Finally, the employee confirmed that

the FSA ID that electronically signed the Consolidation Loan Application matched all personal

information associated with Chinda Nomesiri.  (AR 21.)  In sum, the employee concluded that all

of these factors made identity theft quite unlikely.  (ECF No. 17-3 ¶ 38.)

On June 24, 2020, the Department mailed Nomesiri a letter denying his request for

discharge.  (AR 3.)  That letter mistakenly listed Nomesiri's original loans as being associated

with attendance at DeVry University.  (Id.)  The next day, the Department mailed a corrected

letter with the accurate postsecondary education institutions—Sacramento City College and

California State University-Sacramento—properly listed.  (AR 1.)

This action was filed by Nomesiri on July 17, 2020, where he listed his address still at 7741 Frost Way in Sacramento, California.  (ECF No. 1 at 1.)

**DISCUSSION**

Nomesiri filed this action under the APA seeking review of the Department's decision denying his request for a discharge of his student loans based on the claims that (1) "the debt is not his"; and (2) "that it was impossible" for him to have signed for the consolidation applications because he was incarcerated at the time of the signing of the Promissory Note.  (ECF No. 4 at 2.)

Nomesiri filed his Motion for Summary Judgment on April 21, 2021.  (ECF No. 15.)  In it, he claims that "summary judgment is appropriate because [the Department] has not provided [a] genuine issue of material fact to support their claim."  (Id.)  He again claimed that the signature on the Consolidation Loan Application and Promissory Note was not his and that it was "impossible for him" to have signed it on the date listed on Promissory Note.  (Id.)  Nomesiri submitted no additional proof of these allegations, nor any citation to the AR.  (See Id.)

The Department filed its cross-motion for summary judgment on June 1, 2021, claiming that the Department did not act arbitrarily or capriciously in denying Nomesiri's request to discharge his student loan debt because that decision was "reasonable and supported by substantial evidence" in the record.  (ECF No. 17-1 at 14.)  Nomesiri filed an opposition/reply brief to the Department's cross-motion amending to his arguments the allegation that given the Department's "mistake" of referencing an incorrect education institution—DeVry University—"it is reasonable to ask what other mistake[s there are]."  (ECF No. 18 at 2.)

The court reviews the Department's administrative action denying Nomesiri's request for student loan discharge the administrative record and briefing.

**Legal Standards for Summary Judgment on Review of Agency Action**

Federal Rule of Civil Procedure 56(a) allows for a party to move for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

7

When courts review administrative agency actions under the APA, judicial review is "highly deferential," "extremely narrow," and presumes agency action to be valid.  USPS v. Gregory, 534 U.S. 1, 7, 14 (2001).  A court reviewing an agency action under the APA may set aside that action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  Moreover, it is not the place of the court to "substitute its own judgment for that of the [agency]."  Id. at 7.  As long as the agency can "articulate a rational connection between the facts it has found and its conclusions," the agency action will be upheld.  Friends of the Clearwater v. Dombeck, 222 F.3d 552, 561 (9th Cir. 2000). The court analyzes those facts and conclusions the agency used in reaching its decision, drawn primarily from the agency's administrative record.  Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005).  Additionally, a reviewing court may consider agency materials outside of the discrete administrative record to "determine whether the agency has considered all relevant factors and has explained its decision" or "to explain technical terms or complex subject matter." Ctr. for Bio. Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (9th Cir. 2006).

Under this highly deferential standard of review, the court "does not employ the usual summary judgment standard for determining whether a genuine issue of material fact exists." S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 723 F. Supp. 2d 1247, 1256 (E.D. Cal. 2010).  The focus is, instead, on whether or not the agency's action was reasonable.  FCC v. Fox Television Stations, 556 U.S. 502, 514-517 (2009).  Again, only if the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" will the agency's decision be reversed.  5 U.S.C. § 706(2)(A).

**Analysis**

Nomesiri makes, primarily, two arguments in support of his motion for summary judgment seeking reversal of the Department's decision denying his request to discharge his student loan debt.  First, he claims that the original Consolidation Loan Application and Promissory Note lacks his signature.  (ECF No. 15 at 1.)  Second, he claims that it was "impossible" for him to have signed the application on the date it was electronically signed, September 11, 2015.  (cf. ECF No. 15 at 1; with AR 85.)  In support of this latter contention,

8

Nomesiri provided the Department—and the administrative record so reflects—a copy of Nomesiri's felony abstract of judgment showing that he was sentenced to 6 years and 8 months in the California Department of Corrections on January 24, 2014.  (AR 8.)  Finally, in his opposition/reply brief to the Department's cross-motion for summary judgment, Nomesiri added that the Department's "mistake" of misidentifying his postsecondary educational institution as DeVry University in its June 24, 2020 letter denying discharge makes it "reasonable to ask what other mistake[s there are]."  (ECF No. 18 at 2.)

Nomesiri's conclusory arguments fail to show that the Department acted arbitrarily or capriciously in denying his request for discharge of his student loan debt given its reasonable conclusion that the Consolidation Loan Application, Promissory Note, and Repayment Plan Request were all likely authorized by Nomesiri.

1. <u>The Department did not receive from Nomesiri sufficient proof of identity theft and reasonably denied his request for discharge, in compliance with its own regulations.</u>

In its cross-motion for summary judgment, the Department correctly notes that "Nomesiri failed to provide it with information required by 34 C.F.R. § 685.215."  (ECF No. 17-1 at 10.) The Department's regulations allow it—but do not require it—to discharge a student borrower's loans for "false certification."  34 C.F.R. § 685.215(a)(1).  For a student borrower to qualify for discharge of their student loan debt under this provision:

> [T]he borrower must submit to the Secretary [of the Department of Education] an application for discharge on a form approved by the Secretary. The application . . . must be made by the borrower under penalty of perjury; and in the application, the borrower's responses must demonstrate to the satisfaction of the Secretary that the requirements . . . of this section have been met. If the Secretary determines the application does not meet the requirements, the Secretary notifies the applicant and explains why the application does not meet the requirements.

34 C.F.R. § 685.215(c).

The Department *may* approve an application for discharge if the borrower can demonstrate that they were the victim of identity theft that resulted in the incurring of the student loan debt.  The Department's regulations outline the borrower's burden to show identity theft as follows: "[T]he individual must—

(A) Certify that the individual did not sign the promissory note, or that any other means of identification used to obtain the loan was used without the authorization of the individual claiming relief;

(B) *Certify that the individual did not receive or benefit from the proceeds of the loan* with knowledge that the loan had been made without the authorization of the individual;

(C) *Provide a copy of a local, State, or Federal court verdict or judgment* that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft; and

(D) If the judicial determination of the crime does not expressly state that the loan was obtained as a result of the crime of identity theft, provide—

(1) Authentic specimens of the signature of the individual, as provided in paragraph (c)(2)(ii) of this section, or of other means of identification of the individual, as applicable, corresponding to the means of identification falsely used to obtain the loan; and

(2) A statement of facts that demonstrate, to the satisfaction of the Secretary, that eligibility for the loan in question was falsely certified as a result of the crime of identity theft committed against that individual.

34 C.F.R. § 685.215(5)(i)(A)-(C) (emphasis added).

Nomesiri asserts in his original complaint, and again in his motion for summary judgment, that the signature provided on the Consolidation Loan Application and Promissory Note was not his and that it was "impossible" for him to have signed it. (ECF No. 1 at 3; ECF No. 15 at 1.) The only proof Nomesiri offered the Department in support of these contentions was his Sacramento County, California felony abstract of judgment sentencing him to 6 years and 8 months on January 24, 2014. (AR 4, 8.)

There are two problems with the evidence Nomesiri offered the Department.

First, Nomesiri failed to certify that he did not "receive or benefit from the proceeds of the loan." 34 C.F.R. § 685.215(5)(i)(B). The Department correctly notes that Nomesiri in fact did receive—and benefit from—the consolidation loans. Between May 2, 2005, and September 29, 2008, Nomesiri took out seven Stafford loans while attending Sacramento City College and California State University-Sacramento. (AR 28-30.) He never contested the validity of these loans. By 2015, all seven of these loans were in default. (AR 35-55.) The Department's DMCS sent a notice of default, on July 30, 2015, to Nomesiri's listed address at 7741 Frost Way in Sacramento, California. (AR 104.) One month later, the Consolidation Loan Application and Promissory Note was received by the Department. (AR 82.)

10

These two loan consolidations conferred several benefits upon Nomesiri.  One benefit of the consolidation was that Nomesiri's seven defaulted student loans were paid in full.  (AR 36, 39, 42, 45, 48, 51, 54.)  This consolidation ended the Department's collections actions against Nomesiri, ceasing negative reports to Nomesiri's accounts within the credit reporting agencies.  (ECF No. 17-3 at ¶ 27.)  Another benefit that Nomesiri received was the consolidation loans likely lowered Nomesiri's minimum monthly payment.  In her sworn declaration, Cristin Bulman, a loan analyst within the Department, informed the court that consolidation loans are often created "to lower monthly student loan payments."  (ECF No. 17-3 ¶ 12.)  During the Department's September 2, 2015 phone call, the person self-identified as Nomesiri stated that "he would be unable to pay the required 15% of income" to make the minimum payments.  (AR 78; ECF No. 17-4 ¶ 22.)  Less than ten days later, on September 11, 2015, the Consolidation Loan Application and Promissory Note was submitted.  (AR 78; ECF No. 17-4 ¶ 24.)  Finally, paired with the consolidation application was a "Repayment Plan Request," that placed Nomesiri's newly created consolidation loans into forbearance, delaying the need to make payments.  (AR 32-33; ECF No. 17-3 ¶ 26.)

The Department has articulated a "rational connection" between the consolidation loan application and direct benefits to Nomesiri.  Friends of the Clearwater, 222 F.3d at 561.  Under the "highly deferential" standard of review of an agency's action, this is sufficient.  Gregory, 534 U.S. at 14.

The second problem with Nomesiri's argument is that he failed to provide sufficient proof of identity theft.  The regulations provide two avenues for a borrower to show identity theft.  The clearest is for a borrower to "[p]rovide a copy of a local, State, or Federal court verdict or judgment that conclusively determines that the individual who is named as the borrower of the loan was the victim of a crime of identity theft."  34 C.F.R. § 685.215(5)(i)(C).  The alternative, "[i]f the judicial determination of the crime does not expressly state that the loan was obtained as a result of the crime of identity theft," is for a borrower to provide "[a]uthentic specimens of the[ir] signature . . . and [a] statement of facts that demonstrate, to the satisfaction of the Secretary," that the loans were obtained as a result of identity theft.  34 C.F.R.

11

1    § 685.215(5)(i)(D)(1)-(2). Nomesiri offered no such documentation.

2         Nomesiri's claim runs into another problem here.  That is, *only after* providing a copy of a

3    "court verdict or judgment that conclusively determines" identity theft may a borrower seek

4    discharge through the Department-discretionary "statement of facts" avenue.   34 C.F.R.

5    § 685.215(5)(i)(C), (D)(2).  Yet, that "judicial determination," showing at least some support of

6    the identity theft claim, is still necessary under the regulations.  § 685.215(5)(i)(D).  And

7    Nomesiri failed to provide this.  In Nomesiri's June 1, 2020 letter to the Department disputing the

8    consolidation loans, he stated that he had not even "filed a police report" yet.  (AR 20.)

9         This lack of substantiation in the record for Nomesiri's claim that he was the victim of

10   identity theft supports the Department's conclusion denying Nomesiri's request for discharge.  In

11   judicial review for purposes of a motion for summary judgment, a "party cannot rest upon the

12   mere allegations . . . of its pleading, but must instead produce evidence that sets forth specific

13   facts" supporting their argument.  <u>Estate of Tucker v. Interscope Records</u>, 515 F.3d 1019, 1030

14   (9th Cir. 2008).  The Department's regulations similarly require proof of identity theft for loan

15   discharge and Nomesiri offered none.  The Department's conclusion that Nomesiri failed to

16   satisfy the regulatory requirements for showing identity theft was therefore reasonable.

17       2.  <u>The Department reached a reasonable conclusion of denial of Nomesiri's request for</u>
18           <u>discharge</u>

19        A reviewing court is not necessarily bound by the regulations, but the court's role "is to

20   determine whether or not . . . the evidence in the administrative record permitted the agency to

21   make the decision that it did."  <u>S. Yuba River Citizens League</u>, 723 F. Supp. 2d at 1256.

22   Ultimately, if the agency's action was "reasonable," the reviewing court must uphold the

23   decision.  <u>FCC v. Fox</u>, 556 U.S. at 514-515.

24        Here, even setting aside Nomesiri's failure to meet the Department's specific regulatory

25   requirements for proving identity theft, the Department's conclusion of denial of discharge was

26   reasonable given the facts in the administrative record.

27        First, Nomesiri never contested his underlying student loan debt from Sacramento City

28   College and California State University-Sacramento.  (AR <u>passim</u>.)  The consolidation

                                              12

application merely packaged his seven separate Stafford loans into two consolidated loans.  (AR 28-29.)  So, even if these consolidations were found to be fraudulent and discharged, the original loan balances, that Nomesiri never challenged, "would be reinstated and Mr. Nomesiri would remain liable on them."  (ECF No. 17-3 ¶ 13.)  This underlying fact supports the Department's conclusion that the consolidation application was unlikely to be the product of fraud.  See, e.g., Friends of the Clearwater, 222 F.3d at 561 ("An agency need only articulate a rational connection between the facts it has found and its conclusions.")

Second, as discussed above, Nomesiri received several benefits from the loan consolidations.  At a minimum, Nomesiri's credit rating would no longer be negatively impacted after consolidating his seven Stafford loans.  (AR 36, 39, 42, 45, 48, 51, 54; ECF No. 17-3 ¶ 12.)  The Department properly considered the conferral of a direct benefit upon Nomesiri as evidence of the authenticity of the consolidation application.

Third, the Department notes correctly that it is very unlikely that an identity thief could benefit from consolidating Nomesiri's loans for him.  (ECF No. 17-1 at 12.)  Consolidation loans "do not result in a check or [electronic funds transfer] being issued directly or payable to a borrower or a school," instead, the funds only pay off existing loans and create a new loan for the borrower.  (ECF No. 17-3 ¶ 12.)  It would be a curious case of fraud for a criminal to choose to convey the benefits of their fraud on the alleged victim; here, ceasing negative credit reports and requesting loan forbearance for Nomesiri.  The Department reasonably concluded that this possibility was quite remote.

Fourth, the numerous forms of identification used in the Consolidation Loan Application and Promissory Note make it reasonable to conclude that Nomesiri either completed the application himself, or authorized someone to complete it on his behalf.  The consolidation application was completed after signing in with Nomesiri's unique FSA ID.  (ECF No. 17-3 ¶ 23.)  The FSA ID "is a username and password combination that gives authorized users access to FSA websites."  (Id.)  The FSA ID also "carries the same legal status as a written signature" on the Department's student borrower web portals.  (Id.)  To secure these login credentials, Nomesiri's FSA ID requires authentication by utilizing his "Social Security Number, name, and

13

1   date of birth with the Social Security Administration."  (Id.)  Next, the consolidation application

2   required the entry of two personal references.  (AR 81.)  Nomesiri's application listed two close

3   personal relatives, and Nomesiri never contested the accuracy of those listed references.  (Id.)

4   These factual bases are adequate for the Department to conclude that fraud was quite unlikely.

5   See Arsenault v. DeVos, 2021 WL 1393970, at *3 (E.D. Mich. Mar. 8, 2021) ("[P]laintiff cannot

6   avoid liability for the loans merely because the documents were signed electronically.").

7        Fifth, Nomesiri's purported "proof" in the form of his felony abstract of judgment is

8   insufficient to overcome the other evidence in the record.  And moreover, the Department's

9   rejection of this "proof" of incarceration was also reasonable.  The reviewing employee, Cherry,

10   concluded that the felony abstract of judgment alone was insufficient "to determine . . . if

11   [Nomesiri] was incarcerated during the time of loan consolidation." (AR 72.)  The Department

12   considered this in context with the fact that the consolidation application and loan forbearance

13   were requested with Nomesiri's FSA ID and then confirmed by mail to Nomesiri's listed address

14   on Frost Way.  (Id.)  Moreover, the Department had already been in contact with a person

15   claiming to be Nomesiri on several occasions post-dating the felony abstract of judgment.  (See

16   AR 72-78 (listing the September 2, 2015 phone call and a series of letters sent on April 22, May

17   12, and June 1, 2020, all from the 7741 Frost Way address.))  The Department concluded that

18   Nomesiri could have electronically signed the consolidation application with his FSA ID himself

19   from prison or another location, or requested a family member do so for him.  Ultimately, "a

20   court is not to substitute its judgment for that of the agency, but instead to assess only whether the

21   decision was based on a consideration of the relevant factors and whether there has been a clear

22   error of judgment.  Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct.

23   1891, 1905 (2020).  No such error of judgment exists here.

24        Finally, Nomesiri's claim that the Department's mistaken listing of his school of

25   attendance as DeVry University makes it "reasonable to ask what other mistakes [] there [are]" is

26   erroneous.  (ECF No. 18 at 2.)  The Department admits that in its June 24, 2020 letter denying his

27   request for discharge of his loans, it mistakenly listed Nomesiri's underlying loans as deriving

28   from attendance at DeVry University.  (AR 3; ECF No. 17-1 at 8.)  Indeed, the very next day, the

1  Department mailed a corrected letter with the accurate schools listed as Sacramento City College

2  and California State University-Sacramento.  (AR 1.)  The Department's decision stands unless it

3  was an "arbitrary and capricious" conclusion or an "abuse of power."  Arsenault, 2021 WL

4  1393970, at *3.  The mistaken fact in this letter to Nomesiri was immaterial to the ultimate

5  conclusion the Department reached and was certainly not an abuse of power.

6          Nomesiri here urges the court to rely almost entirely upon his conclusory statement that he

7  did not sign the consolidation application, offering no further proof of this claim.  But, the court's

8  role when reviewing administrative agency action is not so sweeping as to invalidate agency

9  conclusions when the administrative record so overwhelmingly supports its decision.  Gregory,

10  534 U.S. at 7.  Thus, the Department properly rejected Nomesiri's request for discharge of his

11  student loan debt as that conclusion is more than reasonable in light of the administrative record.

12                                    **RECOMMENDATIONS**

13          Accordingly, it is hereby RECOMMENDED that:

14          1.  Plaintiff's motion for summary judgment (ECF No. 15) be DENIED;

15          2.  Defendant's cross motion for summary judgment (ECF No. 17) be GRANTED;

16          3.  Judgment be entered for defendant; and

17          4.  The Clerk of Court be directed to CLOSE this case.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served on all parties and filed with the court within fourteen (14) days after service of the

24  objections.  The parties are advised that failure to file objections within the specified time may

25  waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

26  Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

27  Dated:  December 6, 2021
   nome.1440

28

                                                    KENDALL J. NEWMAN
                                                    UNITED STATES MAGISTRATE JUDGE